IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 5:02-cr-00038-RH-AK

MARVIN FLEMING,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This cause is before the Court on Defendant's motion to vacate pursuant to § 2255, Doc. 93. The Government has filed its response, Doc. 100, and Defendant has filed a reply. Doc. 103. This cause is therefore in a posture for decision.[1] After careful consideration, the Court recommends that the motion to vacate be denied without evidentiary hearing.

**BACKGROUND**

Defendant was indicted with a co-defendant, Charles Bynum, for conspiracy to distribute and to possess with intent to distribute more than 500 grams of methamphetamine. Doc. 1. Bynum was quickly arrested and pled guilty to the charge in the Indictment. He received a life sentence.

Defendant was not arrested until July 4, 2003, when he was arrested in the Central District of California. Doc. 37. He initially appeared before the magistrate judge in this Court

---

[1]This cause was administratively reassigned to the undersigned on September 7, 2007.

on August 1, 2003. At that time, the public defender was appointed as counsel, and arraignment and a detention hearing were set for a few days later. Doc. 44. On August 6, 2003, the magistrate judge set jury selection for September 15, 2003. Doc. 56. Two weeks later, the Court appointed Gregory Cummings to represent Defendant in stead of the public defender. Doc. 57.

On September 12, 2003, the Government filed a § 851 Notice of Intent to Seek Enhancement, advising Defendant that it intended to seek an enhanced sentence based on a 1997 conviction for "Import, Sale, and Distribution of Controlled Substance into State [of California] and Possession of Controlled Substance for Sale." Doc. 60.

On the morning of trial, the Court held a pretrial conference with the attorneys. At that time, Mr. Cummings announced that he was "somewhat hesitantly" ready for trial. Doc. 74 at 2. He told the Court that Defendant had been "semi-cooperative" and was "skeptical." *Id*. According to counsel, when he went to the jail to talk to Defendant and to tell him about the enhancement notice, the "man scared me [and] came across the table, calling me a liar," and accusing him of not working for Defendant. *Id*. at 2-3. Defendant told Cummings that he did not want to talk to him and that there was not going to be a trial because he was going to plead guilty. *Id*. at 3. Defendant told counsel he was wrong about the 20-year mandatory sentence, and though counsel "went home, and...finished preparing for trial," Cummings advised the Court that it "would be doing itself a favor and all concern[ed] if this man had a black lawyer." *Id*. He explained that he was "not comfortable sitting next to" Defendant and that Defendant had "made it clear he wasn't going to talk to me anymore." *Id*. In response to the Court's question, Cummings said he did not "hear any competency issues." *Id*. at 4. Counsel indicated that he had asked Defendant about several witnesses but that Defendant had said, "no, he didn't want any of

them, and I have a list, if necessary, but it's noted he did not want me to subpoena any of these witnesses." *Id*. at 8.

The Court then allowed Defendant "a chance to tell me if there is any concern that you have prior to start of trial, any questions you have about the process that I can answer." *Id*. at 9. In response, Defendant told the Court that he "didn't think [he would] be going to trial this soon," and he accused Cummings of working against him in concert with DEA. *Id*. at 10-11. He elaborated: "[T]his guy, he's not in my corner, and I don't want him to represent me. He is ineffective counsel....If I'm going to trial, I want to get justice....I don't want to be railroaded...." *Id*. at 11.

When Defendant began repeating himself, the Court interrupted to give Defendant "some information with respect to a couple of things that you've said." *Id*. at 13. The Court began by explaining that counsel did not have a choice about the trial date, as the Court had set it in accordance with the dictates of the Speedy Trial Act. *Id*. The Court also explained that Defendant was "confused" regarding the notice of enhancement and the minimum mandatory sentence, which was mandated by law, not by Cummings' acts or omissions, and that the policy of the United States Attorney in this District is to seek an enhanced sentence "in every case where they are entitled." *Id*. at 15-16. The Court also explained that the Government in this District does not "plea bargain it," and it "doesn't do much plea bargaining" at all. *Id*. at 17. Instead, "Your choice is to plea, and you can try to cooperate or not; but it often happens in this district that they don't offer anything more or less than that." *Id*.

The Court then expressed confidence in counsel: "Mr. Cummings is an experienced lawyer. I've had him in a number of cases. I've never had an instance with Mr. Cummings

where I was concerned that he wasn't doing his best, or that he wasn't prepared, or that he wasn't in his client's corner." *Id*. In short, the Court advised Defendant that he had not "told me anything that makes me think that Mr. Cummings is doing anything other than being a good and effective lawyer in this case." *Id*. at 18-19.

In response, Defendant reiterated that he did not want Cummings to represent him: "He might be all right for you, but I happen to know he ain't all right for me, 'cause I know the law too," and he told the Court that he was not ready for trial, as he had "some peoples coming in here. I've got my kids. I've got my brothers. I've got my sisters." *Id*. at 19-20. Defendant flatly told the Court: "I want another attorney. I don't want to go to trial today before no jury. I don't want to go to trial. I talked to my daughter yesterday and told her that I would let them know when my trial is. I don't want to go to trial." *Id*. at 23.

However, as a compromise, the Court proposed selecting the jury and then having "the testimony put on on October 2nd and 3rd, that gives your family plenty of time to be here," to which Defendant agreed. *Id*. at 25. The Court then took a short recess, but before starting jury selection, it received "word...that Mr. Fleming indicated that he might wish to waive a jury trial." *Id*. at 28. The Government did not object to a waiver of jury trial, and the Court then questioned Defendant on the record regarding his decision. *Id*. at 28-35. At the conclusion of this discussion, the Court found that Defendant "knowingly, voluntarily, and intelligently waived his right to a trial by jury," and that he "well understands that he has the constitutional right to be tried by a jury, but has made the choice to waive that right and to proceed instead to trial before the court." *Id*. at 35. After discharging the jury, the Court heard evidence from one Government witness and then recessed the trial until the October date.

At trial, the Government introduced evidence that identified Defendant, also known as "Bob," as the source of methamphetamine sold to several cooperating informants. Mr. Cummings challenged the credibility of these witnesses, arguing that while Defendant did in fact receive money and made phone case about receiving money, he did not know that the money was part of any illegal drug activity. When Defendant testified, however, he admitted that he knew from the first meeting with the cooperating witnesses that they were interested in buying drugs. After several days of testimony, the Court rendered its verdict finding Defendant guilty. Doc. 82 at 73. More specifically, the Court stated:

> There are some conflicts in the testimony. It is clear beyond a reasonable doubt that Mr. Fleming assisted in transactions by which methamphetamine was sold by someone in California to Mr. Slay and Ms. Austin in Florida. Even on Mr. Fleming's version of the facts, he knew from the time he first met Mr. Slay and Ms. Austin that they were looking to buy drugs. He put them in touch with the person variously identified as Sergio or Neto, and sometimes referred to...as the Mexican....[T]hen according to Mr. Fleming's own testimony, when...Sergio did not want to deal directly with Mr. Slay or Ms. Austin, Mr. Fleming agreed to receive payments and pass them along to Sergio in exchange for a hundred dollars, agreeing to be the go-between transferring money from the buyer to the seller of drugs. Knowing...that's the type transaction being conducted is sufficient under the law to make one guilty of conspiracy to distribute the drugs.
>
> It also is clear that Mr. Fleming did that not just once but on a number of occasions, and that the amount of methamphetamine involved in the transactions that he assisted and facilitated exceeded 500 grams. Thus, he is guilty of this charge.

*Id*. at 74-75.

In response to the Government's inquiry, the Court stated that "[f]or today's purposes," it was finding only that the amount of drugs involved was "in excess of 500 grams." *Id*. at 75.

At sentencing, the Court noted Defendant's objections to the Presentence Report, the tenor of which was that Defendant "is not guilty...." Doc. 75 at 3. When the Court asked if the

objections affected the Guidelines ranges, the following exchange occurred:

> MR. CUMMINGS:   Judge, just the objection where we talk about that Mr. Fleming wants the court to knew he never sold any drugs or had any illegal drug dealings before. Like the court says, he retains the fact that he's not guilty, which would take him out of the guideline range in this respect. But other than that, no sir.
>
> THE COURT:   All right. And I suppose in one respect the assertion that he's not guilty means that the quantity is not what's alleged, because, if he's not guilty at all, that shouldn't be in the five to 15 kilogram range. But there is not a separate contention that, if I accepted the evidence as I did, that this is the wrong amount.
>
> MR. CUMMINGS:   No.

*Id*. at 3-4. The Court then questioned Defendant about the prior drug conviction underlying the

mandatory minimum 20-year sentence:

> THE COURT:   If you have any basis for challenging the validity of that conviction or for asserting that it should not be considered in connection with the sentence to be imposed in this case...then you need to tell me about that at this point. If you don't raise an assertion of the invalidity of that conviction at this time, you won't be able to assert later that that conviction was not valid and should not have been used in connection with the sentencing in this court.
>
> The conviction that's set forth in paragraph 36 is a conviction for attempted transport and sale of narcotics in the Riverside Municipal Court in Riverside, California. The presentence report indicates that you were sentenced to three years in state prison on that charge and, in fact, served about a year and a half.
>
> Were you convicted of that offense in California in 1997?
>
> THE DEFENDANT:   I was–it wasn't a transport.

* * *

|||
|---|---|
| | They got it wrong.  It was not a transport conviction.  They convicted me–the guy had half a gram stuff in his truck, which was his stuff.  So, they made me an accessory and gave it to me, because I had been busted in a drug raid, like I explained to him.  So, they gave me it because I was the older guy, and he never been arrested before, but the didn't know he was a drug addict.  We had been at the gambling casino together.  I tried to explain that to him. |
| THE COURT: | All right.  But you were convicted of a drug offense? |
| THE DEFENDANT: | I was convicted, and I appealed it.  I've got it in appeal right now. |
| THE COURT: | The appeal is still pending now? |
| THE DEFENDANT: | Right.  I will beat that.  I'm going to sue him for that.  My daughter is handling that. |
| MR. CUMMINGS: | Judge, I don't believe the appeal is pending at this point in time.  Mr. Fleming has indicated he is going to reopen that appeal. |
| THE DEFENDANT: | My daughter is handling it. |
| MR. CUMMINGS: | Or his daughter is going to reopen it up.  It's not pending at this time.  It did apparently go up on appeal. |
| THE DEFENDANT: | I talked to the guy who was supposed to file it. |
| THE COURT: | So, in any event, there is now an effort being ;made or going to be made to set aside that conviction? |
| MR. CUMMINGS: | Perhaps. |
| THE COURT: | All right.  And, Mr. Fleming, to the extent you know, what are the grounds on which you are going to challenge that conviction? |

\* \* \*

| | |
|---|---|
| THE DEFENDANT: | Because the law says in–California state law says anything |

>   that's in anybody's property that it's their property, belongs to them. So that was his truck. They found it under the hood of his truck, and I was out in the restroom. When I came back, they had him jacked up. So, they asked me was I with him. I told them, "Yeah, we've been to the casino together."
>
>   So, they took me as the accessory, too. So, I tried to tell them, "I'm just passing through, been gambling at the casino all night." I said, "Why do you want to take me as an accessory?" But they did it, anyway.

THE COURT: Did you have a trial in that case?

THE DEFENDANT: That's the case that I went to trial on it....

\* \* \*

THE COURT: And you eventually were convicted?

THE DEFENDANT: Right....

THE COURT: You went to trial and were convicted?

THE DEFENDANT: Right. They gave it to me, and I appealed it.

*Id*. at 4-7.

The Court then allowed Defendant himself to make further objections regarding the PSR, the most important of which involved his denial of the drug quantities attributed to him. *Id*. at 11. Afterward, the Court imposed sentence of 240 months, the minimum mandatory sentence. *Id*. at 12-13; *see also* Doc. 70.

Defendant appealed with new counsel. The only issue on appeal was whether the Court erred in accepting the oral waiver of jury trial. Doc. 89. The Eleventh Circuit concluded that Defendant "neither showed a constitutional violation, nor that the district court plainly erred in accepting his oral waiver of his right to a jury trial." *Id*. The court did not consider that the

waiver resulted from counsel's alleged ineffectiveness, as the Court had not made the necessary inquiries or findings for that determination at the trial level. *Id*.

The instant motion followed. On this occasion, Defendant raises four issues, which will be addressed in turn.

## DISCUSSION

1. Failure of counsel to object to trial beginning less than 30 days from date of appointment.

This claim is without merit. The Speedy Trial Act requires that trial not commence less than "thirty days from the date on which the defendant first appears through counsel...." 18 U.S.C. § 3161(c)(2). Defendant "first appear[ed] through counsel" on August 6, 2003, when he appeared for arraignment with court-appointed counsel. Doc. 55. *See also United States v. Darby*, 744 F.2d 1508, 1519-20 (11th Cir. 1984) (under plain meaning of phrase "first appears through counsel," minimum time for commencement of trial was triggered by defendant's appearance at arraignment with counsel even though that attorney was later allowed to withdraw). At that time, the Court set trial for September 15, 2003, forty-one days later. Doc. 56. Plainly, there was no speedy trial violation here, as the 30-day time period did not commence with Mr. Cummings' appointment, as Defendant argues, but commenced with Defendant's first appearance with counsel, even though the attorney who appeared at the arraignment was not Mr. Cummings. Thus, neither trial nor appellate counsel was ineffective for failing to raise this meritless issue.

In his memorandum, Defendant suggests further that counsel was not prepared for trial when it commenced as he "had not done adequate investigation into the facts and the law prior to trial or sentencing" and he "had only met with Mr. Fleming twice to discuss a 'deal'...he had

little of the discovery, none of the documents of the prior conviction and none of the Jencks Act material." These allegations are plainly contrary to Mr. Cummings' representations to the Court at the time of trial that he had prepared for trial despite Defendant's outburst at the jail, and, in this Court's view, the allegations are not otherwise supported by the record of proceedings. The trial was lengthy, considering it was non-jury, and the documentary evidence substantial, and nothing in counsel's examination of the witnesses suggests that he had not seen the documents prior to trial or that he was not aware of their existence or that he was surprised in any manner by the Government's evidence.

2. "Conflict between [Defendant] and his trial counsel caused [Defendant] to receive deficient representation–no objection made to Court's lack of proper inquiry into the actual conflict."

To prevail on an ineffective assistance of counsel claim based on a conflict of interest, a defendant must show "specific instances in the record that 'demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *Caderno v. United States*, 256 F.3d 1213, 1218 (11th Cir. 2001) (quoting *Cuyler v. Sullivan*, 446 U.S. 335 (1980)).

The fact that a defendant vociferously complains that his attorney is ineffective, as instant Defendant did when he appeared for trial, does not operate to show that counsel's alleged conflict adversely affected his performance. Furthermore, the fact that the Court found Defendant guilty does not establish that the alleged conflict adversely affected counsel's performance. As these are the only instances to which Defendant can point to show that counsel's performance was adversely affected in this case by the alleged conflict, the claim fails. The Court explored the issue of the conflict at the time it was raised and was satisfied, as it is now, that Defendant's complaints were nothing more than sound and fury signifying nothing.

Mr. Cummings was prepared on September 15, to proceed with trial despite Defendant's complaints about him, and the Court has no hesitation in finding that counsel adequately and effectively represented Defendant when trial resumed several weeks later and that there is nothing in his performance which raises a specter that the level of his representation was compromised in any manner.

> 3. "Deficient representation caused [Defendant] to be sentenced for more drugs than he was responsible for and for a prior conviction for which there is no record."

Though he claimed he was "railroaded" and he was going to reopen the appeal, Defendant admitted the 1997 drug conviction in California, and the Government introduced a certified copy of his criminal history at trial showing a May 21, 1997, drug conviction. Furthermore, under § 851, a defendant cannot challenge, as a matter of law, a prior drug conviction "which occurred more than five years before the date of the information alleging such prior conviction" 21 U.S.C. § 851(e). Defendant's 1997 conviction was not challengeable under § 851(e) because the statute of limitations had expired for asserting a challenge to a prior conviction. The date of the Government's Notice was September 12, 2003, more than five years after the conviction. Counsel was therefore not ineffective for failing to challenge this prior conviction.

In addition, counsel was not ineffective for failing to object further regarding the drug quantity. He plainly objected that Defendant maintained his innocence, thereby in effect, objecting that any drug quantity be attributed to Defendant whatsoever. Even after *Booker* (which was not the law at the time of Defendant's sentencing), the Court may continue to determine drug quantity and other extra-verdict enhancements by a preponderance of the

evidence. *United States v. Rodriguez*, 398 F.3d 1291, 1297 (11th Cir. 2005). The law is clear that in a conspiracy case, the relevant conduct of the co-conspirators is properly considered in assessing a defendant's overall offense level, including the "quantity of drugs that passed through" the co-conspirators. *United States v. Gallashaw*, 213 Fed. Appx. 792, 795 (11th Cir. 2007). Relevant conduct is considered under a preponderance of the evidence standard, not the beyond a reasonable doubt standard. *Id*. Thus, the Court properly considered the quantities to which the cooperating witnesses testified, and counsel was not ineffective for failing to raise a meritless objection.

4.  Failure of appellate counsel to raise issues on appeal.

As none of the issues raised herein had merit, appellate counsel was not ineffective for failing to raise them on appeal. This claim is therefore without merit.

**CONCLUSION**

Having carefully considered the matter, the Court finds that none of Defendant's claims have merit, and therefore, it is respectfully **RECOMMENDED** that the motion to vacate, set aside, or correct sentence, Doc. 93, be **DENIED.**

**IN CHAMBERS** at Gainesville, Florida, this 10th day of March, 2008.

S/A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may**

**respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**